IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHANIEL HILLIARD,
a/k/a "Boo Boo,"

   *Petitioner*,

v.

UNITED STATES OF AMERICA,

   *Respondent*.

Criminal No. ELH-17-0191

## MEMORANDUM OPINION

Defendant Nathaniel Hilliard, who is now self-represented, is serving a total sentence of 420 months (ECF 158) for the offenses of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846, and discharging a firearm resulting in death, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. 924(c), (j).

This Memorandum Opinion resolves two motions filed by Hilliard.[1] In particular, he has filed a motion (ECF 283) under Fed. R. Civ. P. 60(b)(3), asking the Court to reconsider its prior ruling (ECF 257, ECF 258) denying defendant's post-conviction petition (ECF 221). The motion is supported by a memorandum (ECF 283-1) and exhibits (collectively, the "Rule 60 Motion"). Defendant has also submitted correspondence asking whether he qualifies for relief under Amendment 821 to the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). *See* ECF 345. I shall construe ECF 345 as a motion for sentence reduction ("§ 821 Motion").

---

[1] The defendant's last name is spelled as "Hillard" in the Indictment. But, defendant uses the spelling of "Hilliard." *See* ECF 345.

The government opposes the Rule 60 Motion. ECF 290. And, it has also responded to the § 821 Motion. ECF 348. The Office of the Federal Public Defender has declined to supplement defendant's § 821 Motion. ECF 349.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall deny both motions.

## I.    Factual and Procedural Background[2]

Hilliard and three others were charged in a Superseding Indictment filed on July 11, 2017. ECF 63. Defendant was charged in Count One with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846, and he was charged in Count Five with discharging a firearm resulting in death, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c), (j). The § 846 conspiracy offense served as the predicate crime for the § 924(c) offense. *See* ECF 63.[3]

Count One carried a mandatory minimum term of imprisonment of ten years, with a maximum of life imprisonment. *See* 21 U.S.C. §§ 846, 841(b)(1)(A). Count Five carried a mandatory minimum term of imprisonment of ten years, with a maximum of life, consecutive to the sentence for Count One. *See* 18 U.S.C. §§ 924(c) and 924(j)(1).

Among other things, on March 17, 2017, investigators intercepted a call between Hilliard and a co-conspirator, capturing in real time the murder of Donya Rigby, who sometimes acted as a "lookout" for the drug trafficking organization ("DTO") in which defendant was involved. Apparently, Rigby's performance was regarded as unsatisfactory, and members of the DTO were

---

[2] I restate much of the factual and procedural summary that was set forth in my Memorandum Opinion of March 24, 2020 (ECF 257), denying defendant's post-conviction petition (ECF 221).

[3] In view of the gravity of the charges, Hilliard had two court-appointed attorneys.

displeased. ECF 119 at 4-5. In the intercepted call, Hilliard was heard alerting a co-conspirator to Rigby's presence, and he provided instructions as to the murder itself. *Id.* at 5.

On January 16, 2018, Hilliard entered a plea of guilty to both charges, pursuant to a Plea Agreement. *See* ECF 118; ECF 119 (Plea Agreement). In the Plea Agreement, the parties agreed that Hilliard qualified as a career offender for the purpose of the drug conspiracy offense. They also agreed that defendant participated in a murder during the drug offense. ECF 119, ¶¶ 6(a), (b)(i). Therefore, the parties recognized that the murder cross-reference would ultimately decide Hilliard's base offense level. Paragraph 6(b)(ii) of the Plea Agreement (ECF 119) states:

> Further, the parties stipulate and agree that because the defendant knowingly participated in a first-degree murder in furtherance of the drug trafficking conspiracy, the defendant's base offense level for the drug trafficking conspiracy is 43, pursuant to U.S.S.G. § 2D1.1(d)(1) and U.S.S.G. § 2A1.1.

Under the Plea Agreement, the government agreed to recommend a "reasonable sentence," based on 18 U.S.C. § 3553(a) and the Guidelines. ECF 119, ¶ 9.

The Amended Presentence Report (ECF 162, "PSR")[4] calculated Hilliard's advisory sentencing Guidelines range, consistent with the Plea Agreement. The PSR concluded that Hilliard was a career offender based on two prior Maryland convictions for armed robbery. *See id.*, ¶¶ 20, 27, 35.[5] However, as the parties anticipated, the PSR determined that the murder cross-reference controlled the offense level for Count One. *See id.*, ¶¶ 14, 20; *see also* U.S.S.G. §§ 2D1.1(d)(1); 2A1.1(a); 4B1.1(a); 18 U.S.C. § 1111. Thus, as contemplated in the Plea Agreement, Hilliard had a base offense level of 43 for Count One. ECF 162, ¶ 14. After deductions for acceptance of

---

[4] The original PSR is docketed at ECF 143.

[5] The underlying case was Hilliard's second federal offense. In 2004, he was convicted of possession of a firearm by a convicted felon in Case WDQ-04-035. Judge William D. Quarles, Jr. sentenced him to a term of 57 months of imprisonment. But, the prior federal offense was not a § 924(c) predicate.

3

responsibility under U.S.S.G. § 3E1.1(a), (b), Hilliard had a final offense level of 40 for Count One. ECF 162, ¶¶ 21, 22, 23.

As to Count Five, the offense of discharging a firearm during a drug trafficking crime, resulting in the death of Donya Rigby, the Guidelines sentence corresponded to the congressionally mandated minimum term of imprisonment of ten years, consecutive to the sentence for Count One. *See* ECF 162, ¶ 24; U.S.S.G. § 2K2.4(b); *see also* 18 U.S.C. § 924(c).

Because Hilliard qualified as a career offender, he automatically had a criminal history category of VI. ECF 162, ¶ 35. However, even if Hilliard were not a career offender, he had a criminal history category of VI because he had a total of thirteen criminal history points. *Id.* ¶ 34. Specifically, defendant had a raw score of eleven criminal history points. *Id.* ¶ 32. But, two points were added under U.S.S.G. § 4A1.1(d), because defendant committed the underlying offense while under a criminal justice sentence for armed robbery, as referenced in ECF 162, ¶ 31, ¶ 33. This resulted in a criminal history score of thirteen points, which equates to a criminal history category of VI. *Id.* ¶ 34.

Sentencing was held on May 21, 2018. ECF 157. Defendant was 39 years of age at that time. ECF 162 at 2. At sentencing, the government played a portion of the intercepted telephone communication that captured Rigby's murder. ECF 230 (Sentencing transcript) at 19-22.

Of import here, the Court concluded that the murder cross-reference—not Hilliard's career offender status—determined his base offense level. The Court said, *id.* at 6:

> Paragraph 6-B of the plea agreement provided that the base offense level is 30 because it was reasonably foreseeable to you, sir, that the conspiracy members distributed more than one kilogram of heroin. And I reference [U.S.S.G. §] 2D1.1(c)(5).
>
> Under the plea agreement, the offense level was increased to 37 because the defendant qualified as a career offender under [U.S.S.G. §] 4B1.1(b)(1). The parties also stipulated in the plea agreement that because the defendant knowingly

4

participated in a first-degree murder in furtherance of the drug trafficking conspiracy, the offense level increases to 43 under [U.S.S.G. §] 2D1.1(d)(1) and 2A1.1.

The PSR, or Presentence Report [ECF 143], gets to the exact same place. It provides that under the cross-reference at [U.S.S.G. §] 2D1.1(d)(1), Section 2A1.1 of the guidelines is used to determine the offense level if a victim is killed under circumstances that would constitute murder under 18 USC Section 1111, and because it results in a higher offense.

The victim in this case, Donya Rigby, was killed during the offense. Therefore, the base offense level is 43 under [U.S.S.G. §§] 2A1.1(a) and 2D1.1(d)(1).

Notably, the Court observed that Hilliard's criminal history category was the same, with or without career offender status. It said, ECF 230 at 11-12:

> When you add up the points, they result in a criminal history subscore of 11 points. The defendant committed this offense while under . . . a criminal justice sentence for the armed robbery in the case that is referenced in Paragraph 31 [of the PSR]. So two more points are added under [U.S.S.G. §] 4A1.1(d). That adds up to 13 criminal history points. That adds up to a criminal history category of VI, which is the worst that you can have. And that's without being a career offender. Even if he is a career offender, as I believe he is, it's a VI. So either way, it doesn't change. His criminal history category is VI.

Hilliard's counsel agreed that defendant's two prior armed robberies qualified as proper predicate offenses for purposes of the career offender designation. *Id.* at 11. Moreover, his lawyer acknowledged "that even if Mr. Hilliard was not a career offender, the guidelines wouldn't change." *Id.*

After deductions for acceptance of responsibility under U.S.S.G. § 3E1.1, defendant had a final offense level of 40 and a criminal history category of VI. The Guidelines for Count One called for a period of incarceration ranging from 360 months to life imprisonment. ECF 230 at 12. And, the Guidelines for Count Five corresponded to the mandatory minimum sentence of 120 months' incarceration, consecutive to the term imposed for Count One. *Id.* at 12-13. Thus, the

5

combined advisory Guidelines range was 480 months to life. *Id.* at 13. The government sought a sentence of 420 months, *i.e.*, 35 years of imprisonment. *Id.* at 27.

In my view, if defendant were sentenced today, he would not qualify as a career offender. A defendant may qualify as a career offender only if, *inter alia*, the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). Under *United States v. Norman*, 935 F.3d 232, 238-240 (4th Cir. 2019), the underlying drug conspiracy offense in Count One is not a qualifying controlled substance offense. *See* U.S.S.G. § 4B1.2(b) (defining controlled substance offense). But, this would not affect defendant's offense level, because it was based on the murder cross-reference, and not on the career offender designation.

Moreover, if defendant were sentenced today, he could receive only one status point for being on probation when the instant offenses occurred, rather than the two points he received. *See* U.S.S.G. § 4A1.1(e). This would result in a criminal history category of V, not VI.

But, this conclusion is academic. Even if defendant had a criminal history category of V, rather than VI, his final offense level would remain at 40, because it is based on the murder cross-reference. *See* U.S.S.G. §§ 2D1.1(d)(1), 2A1.1(a). And, defendant's Guidelines for Count One would not change. With an offense level of 40 and a criminal history category of V, the Guidelines for Count One call for the same sentence: 360 months to life imprisonment.

As to Count One, the Court sentenced Hilliard to a below Guidelines sentence of 300 months. For Count Five, the Court imposed the mandatory, consecutive term of 120 months. This resulted in a total term of imprisonment of 420 months. *See* ECF 158 (Judgment).

Hilliard did not appeal. But, he moved for post conviction relief under 28 U.S.C. § 2255. ECF 221. In a 21-page submission, defendant raised two grounds. First, he claimed that the

6

predicate offense of conspiracy to distribute heroin does not qualify as a "serious drug offense" for the purpose of his conviction under 18 U.S.C. § 924(c). *Id.* at 4, 13. Hilliard also argued that, under Amendment 798 to the Guidelines, which became effective on August 1, 2016, his career offender designation could not be used to enhance his federal sentence. *Id.* at 5, 16.[6]

By Memorandum Opinion and Order of March 24, 2020, I denied the Petition. ECF 257, ECF 258. Hilliard appealed. ECF 265. The Fourth Circuit denied a Certificate of Appealability on November 23, 2020. ECF 272, ECF 272-1. The Mandate issued on May 5, 2021. ECF 282.

## I.    Rule 60(b) Motion

Defendant has filed a "Motion For Reconsideration Pursuant To Federal Rules Of Civil Procedures, Rule 60(b) Section 3." ECF 282. He asks the Court to reconsider its denial of his § 2255 Motion. *See* ECF 221; ECF 256.

In the Rule 60 Motion, Hilliard asserts three grounds for relief that he did not include in his post-conviction petition. They are: (1) defendant's sentence reflects the drug amounts attributable to the conspiracy, rather than the drug amounts attributable to him personally; (2) the indictment never alleged a drug amount attributable to defendant individually; and (3) the facts are insufficient to support defendant's § 924(c) conviction. *See* ECF 283-1. With regard to the third claim, Hilliard contends that someone else committed the crime, and he was merely on the phone when it occurred.

As noted, I denied post-conviction relief by Memorandum Opinion and Order of March 23, 2020. ECF 357, ECF 258. The Rule 60 Motion was filed more than a year later, on June 28,

---

[6] As discussed in ECF 257, the Court understood Hilliard to argue in his second contention that his prior Maryland armed robbery convictions were not proper predicates for a career offender designation.

7

2021. ECF 283. Notably, defendant does not point to any error with the Court's ruling denying his original § 2255 motion.

Fed. R. Civ. P. 60(b) is captioned "Grounds For Relief From A Final Judgment, Order, or Proceeding." It permits a party to file a motion to "relieve [the] party . . . from a final judgment" for "any . . . reason that justifies relief." *See Liljeberg v. Heath Serv. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (noting that Rule 60(b) "provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment.").

In particular, Rule 60(b) allows a party to obtain relief from a final judgment based on the following:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Notably, Rule 60(b) "does not authorize a motion merely for reconsideration of a legal issue." *United States v. Williams*, 674 F.2d 310, 312 (4th Cir. 1982). "Where the motion is nothing more than a request that the district court change its mind . . . it is not authorized by Rule 60(b)." *Id.* at 313.

Moreover, "'[i]t is a well settled principle of law that a Rule 60(b) motion seeking relief from a final judgment is not a substitute for a timely and proper appeal.'" *Wells Fargo*, 859 F.3d

at 300 (citing *Dowell*, 993 F.2d at 48) (alteration added). Rather, "a Rule 60(b) motion is appropriate to raise a significant change in the law or facts, or when 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Classen Immunotherapies, Inc. v. King Pharmaceuticals, Inc.,* 981 F. Supp. 2d 415, 419 (2013) (internal citation omitted). Rule 60(b)(6) should be applied only in "extraordinary circumstances." *See Liljeberg*, 485 U.S. at 863-64; *Aikens v. Ingram*, 652 F.3d 496, 500 (2011).

Of import here, "Rule 60(b) applies to § 2255 proceedings, but only 'to the extent that [it is] not inconsistent with' applicable statutory provisions and rules." *United States v. McRae*, 793 F.3d 392, 397 (4th Cir. 2015) (quoting Rule 12 of the Rules Governing Section 2255 Proceedings) (alteration in *McRae*). Section 2255(h) of 28 U.S.C. provides:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
>
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

A Rule 60(b) motion cannot be used to file what is, in effect, a successive, unauthorized § 2255 petition. "[A] Rule 60(b) motion in a habeas proceeding that attacks 'the substance of the federal court's resolution of a claim on the merits' is not a true Rule 60(b) motion, but rather a successive habeas petition. . . . A Rule 60(b) motion that challenges 'some defect in the integrity of the federal habeas proceedings,' however, is a true Rule 60(b) motion, and is not subject to the

9

preauthorization requirement [for successive petitions]." *McRae*, 793 F.3d at 397 (internal citations omitted).

Here, the Rule 60(b) Motion constitutes a challenge to the validity of defendant's conviction. Therefore, it is clearly a successive § 2255 motion. *See*, *e.g.*, *United States v. Smith*, 2024 WL 2151186 (4th Cir. May 14, 2024) (per curiam); *see Banister v. Davis*, 590 U.S. 504, 509-11 (2020). A district court lacks jurisdiction over a second or successive post-conviction petition if it is filed without authorization by the appropriate court of appeals. *See Bixby v. Stirling*, 90 F.4th 140, 157 (4th Cir. 2024). And, a court that lacks jurisdiction over a second or successive petition is "obliged to dismiss" the petition. *Id.*

Hilliard makes "no showing that the judgment entered in his previous § 2255 motion is defective for any of the reasons outlined in Rule 60(b)." *United States v. Ferguson*, CR No.: 3:06-61-JFA, 2012 WL 13018608, at *1 (D.S.C. Sept. 12, 2012). Moreover, as the government points out, defendant relies on facts that were available to him when he filed his initial § 2255 petition. ECF 290 at 3; *see United States v. Dunham*, Cr. No. 1: 12 CR 11, 2021 WL 2189155, at *2 (N.D. W.Va. May 28, 2021). And, without authorization from the Fourth Circuit, this Court lacks jurisdiction to consider the Rule 60 Motion.

I also pause to address Rule 60(c)(1). Under Rule 60(c)(1), the Motion "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." In my view, the Rule 60(b) motion is untimely, because defendant waited more than a year to file it, and the grounds fall, at best, under Rule 60(b)(1), (2), or (3).

Finally, I underscore that the career offender designation was of no significance to the imposition of sentence. Again, defendant's offense level was based on the murder cross-reference,

10

not the career offender designation. In any event, even if the label of career offender is incorrect, the Court was entitled to consider the offenses themselves that gave rise to the designation, even if the designation itself was erroneous. The sentence here was based on defendant's conduct and other factors under 18 U.S.C. § 3553(a).

For the reasons stated, I shall dismiss and deny the Rule 60 Motion.

## II.     Amendment 821

By correspondence docketed on December 11, 2023 (ECF 345), defendant has inquired about his "Amendment 821 status points." He notes that he received two points because he was on probation when the underlying offense occurred. *Id.*

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

Section 3582(c)(2) of 18 U.S.C. is relevant. It permits a court to reduce the sentence of a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has

11

subsequently been lowered by the Sentencing Commission," if the amendment has been made retroactively applicable and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Moore*, 2024 WL 2828103, at *1 (4th Cir. June 4, 2024) (per curiam). *Id.*; *see United States v. Barrett*, 133 F.4th 280 (4th Cir. 2025); *see also Dillon v. United States*, 560 U.S. 817, 826 (2010)

Amendment 821 to the Guidelines went into effect on November 1, 2023. *Amendment 821*, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821. It "is a multi-part amendment." *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024).

Part A of Amendment 821 pertains to criminal history and so called "status points." *Id.* It amended U.S.S.G. § 4A1.1 "by redesignating subsection (d) as subsection (e) and reducing the additional criminal history points assessed to a defendant who committed his offense while under a criminal justice sentence." *Moore*, 2024 WL 2828103, at *1; *see also Barrett*, 133 F.4th at 282-83. "Criminal justice sentence" under the Guidelines includes probation, parole, supervised release, imprisonment, work release or escape status. U.S.S.G. § 4A1.1(e).

Prior to Amendment 821, two points were added to a defendant's criminal history score if the defendant committed the underlying offense while on parole, probation, or supervised release (previously codified at U.S.S.G. § 4A1.1(d)). But, Amendment 821 limits the assignment of such "status points." *See* U.S.S.G. § 4A1.1(e).

In particular, Amendment 821 permits the assignment of only one status point, not two, and then only if a defendant has seven or more criminal history points. *See* U.S.S.G. § 4A1.1(e). In other words, § 4A1.1(e) eliminates any status points for a defendant who "has six or fewer criminal history points." *Id.*; *see also United States v. Law*, DKC-11-489, 2024 WL 3757902, at

12

*1 (D. Md. Aug. 12, 2024) ("Part A . . . eliminated status points altogether for a defendant with six or fewer criminal history points."). And, a defendant who has seven or more criminal history points is only subject to a one-point increase, rather than a two-point increase. *See* U.S.S.G. § 4A1.1(e).

Part B of Amendment 821 provides for a decrease of two offense levels if ten conditions are met. *See* U.S.S.G. § 4C1.1(a). They are, *id.*:

> **(1)** the defendant did not receive any criminal history points from Chapter Four, Part A;
> **(2)** the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> **(3)** the defendant did not use violence or credible threats of violence in connection with the offense;
> **(4)** the offense did not result in death or serious bodily injury;
> **(5)** the instant offense of conviction is not a sex offense;
> **(6)** the defendant did not personally cause substantial financial hardship;
> **(7)** the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> **(8)** the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
> **(9)** the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
> **(10)** the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

In *Barrett*, 133 F.4th at 288, the Fourth Circuit stated that, as to Amendment 821, a court is "authorized" under the Sentencing Commission's policy statement § 1B1.10(b)(1) "to consider" the effect of Amendment 821 on a defendant's criminal history category under § 4A1.1 and offense level under § 2D1.1(b)(17).

The Fourth Circuit requires the district court to employ a two-step approach in considering § 3582(c)(2) motions. *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016); *United States v. Williams*, 808 F.3d 253, 257 (4th Cir. 2015). "First, a court must determine the defendant's

13

eligibility. Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2). Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Peters*, 843 F.3d at 574 (citations omitted). "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

The government asserts, ECF 348 at 2: "Amendment 821 is retroactive. *See id.* §§ 1B1.10(a)(1), (d). It applies to Mr. Hilliard because he committed the instant offense while serving another sentence, and he has more than 7 criminal history points. *See id.* § 1B1.10(a)(2)(A). Today, he would receive one point instead of two, resulting in 12 criminal history points. Despite this, he is ineligible for a reduction."

The government observes (ECF 348 at 2) that the Court "cannot make a § 1B1.10 reduction if the amendment does not lower the applicable Guidelines range. *Id.* § 1B1.10(a)(2)(B)." And, it maintains that "Amendment 821 does not lower Mr. Hilliard's Guidelines range." ECF 348 at 2. This is because, in its view, defendant qualifies as a career offender, and therefore he has a criminal history category of VI, regardless of Amendment 821. *Id.*

For the reasons that I stated earlier, I am of the view that the government incorrectly maintains that defendant's criminal history category remains a VI because he qualifies as a career offender. *See* ECF 143, ¶ 35; U.S.S.G. § 4B1.1(b). As I indicated previously, if defendant were sentenced today, I do not believe he would not qualify as a career offender because the underlying offense for Count One is drug conspiracy, which is not a qualifying drug offense. *See Norman*, 935 F.3d 232. However, the government's alternative argument has merit.

14

As stated, defendant's offense level was not based on his career offender designation. Rather, the offense level was based on the murder cross-reference. *See* U.S.S.G. § 2D1.1(d)(1) (2016), (2023). And, even if defendant's criminal history category is reduced to V, the Guidelines remain unchanged.

With an offense level of 40 and a criminal history category of V, defendant's total Guidelines remain 480 months to life (360 months to life for Count One, plus 120 months, consecutive, for the § 924(c) offense in Count Five). The defendant received a below-Guidelines sentence.

An Order follows.

Date: November 4, 2025                                /s/
                                                     Ellen L. Hollander
                                                     United States District Judge